IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 1:17-cv-00537-LTB-KLM

BRIAN KOOIENGA, an individual,

    Plaintiff,
v.

GUARANTY BANK AND TRUST COMPANY,
a Colorado Corporation,

    Defendant.

---

ORDER

---

This matter is before me on the Motion for Summary Judgment filed by Defendant Guaranty Bank and Trust Company. ECF No. 42. I have jurisdiction pursuant to 28 U.S.C. § 1331. After considering the parties' arguments and exhibits, I DENY Defendants' motion in part and GRANT it in part for the reasons set forth below.

## I.    FACTS

This action arises out of Defendant's termination of Plaintiff's employment. Based on the briefing and evidence submitted, the parties agree as follows, unless noted. Where a dispute exists, I construe the facts most favorable to the nonmovant.

### A. Background

Defendant is a financial institution. ECF No. 42, ¶ 1. In 2000, Defendant hired Plaintiff Brian Kooienga as a credit analyst. *Id.* at ¶ 7. In 2004, Plaintiff became a relationship manager in Defendant's commercial real estate group where

1

he was primarily responsible for developing new sources of revenue and maintaining commercial banking relationships. *Id.* at ¶ 8–9. Since approximately 2011, Plaintiff reported to Executive Vice President of Commercial Real Estate Banking Chris Erickson. *Id.* at ¶ 10. At that time, Mr. Erickson oversaw two other relationship managers under his chain of command. *Id.* at ¶ 11.

### B. Defendant's employee handbook

Defendant has an anti-retaliation policy in its employee handbook which reads, in pertinent part, that:

> The Company prohibits retaliation against any employee for filing a complaint or for assisting in complaint investigation. If you perceive retaliation for making a complaint or for your participation in an investigation, please use the complaint process listed above so that the situation may be investigated.

*Id.* at ¶ 3.

In 2014, Plaintiff emailed an acknowledgement that he reviewed the updated employee handbook at the request of Senior Vice President of Human Resources Rebecca Adauto Harren. ECF No. 42-3. In her email, Ms. Harren linked to the new edition of the handbook, noted it had been updated, and highlighted specific changes to the handbook, which related to incentive and promotional payouts, the inclusion of an ethics hotline, and a reminder of clean desk expectations. *Id.* The handbook contains disclaimer language and a "Receipt of Handbook Acknowledgement." ECF No. 42-2. While Plaintiff did not sign the acknowledgment waiver, he recognized that his email was "basically [his] acknowledgement that [he] reviewed the handbook . . . ." ECF No. 42-4, 30:2–16; Def.'s Reply, ECF No. 55, ¶ 6.

### C. Investigation of Chris Erickson

In mid-August 2015, an employee of Defendant accused Mr. Erickson of inappropriate conduct months earlier at an after-hours function. ECF No. 42, ¶ 15. Defendant initiated an investigation lead in part by Ms. Harren. *Id.* at ¶ 16. Thirteen employees were interviewed as part of the investigation. *Id.* at ¶ 17. Plaintiff's interview occurred on August 21, 2015. *Id.* at ¶ 19.

On August 24, Ms. Harren relayed the findings of the investigation to Defendant's executive team, including Chief Executive Officer Paul Taylor and President Michael Hobbs. ECF No. 55, ¶ 22.

One day after Ms. Harren relayed the findings to the executive team, Mr. Hobbs issued to Mr. Erickson a "Corrective Action Notice - Final Written Warning" regarding inappropriate actions with at least one female employee. ECF No. 63-5 (under seal). The next day, through the corrective action notice and verbally from Mr. Taylor, Mr. Erickson was suspended without pay for two weeks, had his bonus reduced, and was required to participate in anti-harassment training. ECF No. 42, ¶ 25; Pl.'s Am. Resp., ECF No. 63, ¶ 25.

### D. Plaintiff's corrective action notice

On August 31, 2015, Mr. Hobbs issued a corrective action notice against Plaintiff. ECF No. 42, ¶ 12. The corrective action notice read that Plaintiff made a pricing exception for a loan without prior written approval and then did not remedy the situation prior to closing the loan, going against Mr. Hobbs' direction. ECF No.

42-6. This pricing exception was done by Plaintiff waiving a fee for a letter of credit. ECF No. 42, ¶ 12.

### E. Reduction in force and termination

In October or November 2015, Defendant began discussions of eliminating a position. ECF No. 42, ¶ 26; ECF No. 63, ¶ 26. Defendant looked to eliminate a relationship manager position under Mr. Erickson, who was tasked with rating the relationship managers through a peer group analysis. ECF No. 42, ¶ 34; ECF No. 42-1, 64:11–16; ECF No. 42-5, 46:14–23.

In the peer group analysis, Mr. Erickson evaluated employees on a scale of one through five in categories such as: (1) minimum education required; (2) minimum skills required; (3) overall industry experience; (4) performance rating; (5) credit management; (6) compliance; (7) new portfolio growth; (8) new business development; (9) community involvement; (10) financial statement performance; (11) meeting or exceeding the current job description; (12) corrective action; and (13) other considerations. ECF No. 55, ¶ 37.

After completion of the peer group analysis, Plaintiff ranked last amongst the three relationship managers. ECF No. 42, ¶ 43. On November 30, 2015, Plaintiff was informed of his termination. *Id.* at ¶ 45. Other than Plaintiff, no one who worked under Mr. Erickson was terminated from 2014 to 2016. ECF No. 55-4, 62:17–21.

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is material if its determination might affect the outcome of the suit under the governing law. *Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 972 (10th Cir. 2018). Evidence and any reasonable inferences drawn therefrom are viewed in the light most favorable to the nonmoving party. *T.D. v. Patton*, 868 F.3d 1209, 1219 (10th Cir. 2017).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, a movant need not disprove a nonmovant's claims; rather, it must simply point "out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.

If it meets this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . .

." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986)). The Supreme Court has emphasized that the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–48) (emphasis in original).

## III. ANALYSIS

Defendants move for summary judgment as to both of Plaintiff's claims of retaliation and promissory estoppel. I address the claims in turn.

### A. Retaliation

It is unlawful for an employer to retaliate against employees who participate in investigations of employment practices prohibited by Title VII. 42 U.S.C. § 2000e-3. A claim brought under Title VII may be proved using circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. 411 U.S. 792 (1973); *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015).

Under this framework, a plaintiff bears the initial burden of establishing a *prima facie* case of retaliation by demonstrating that: (1) he engaged in a protected activity; (2) he suffered a material adverse action; and (3) there was a causal connection between the protected activity and the adverse action. *Thomas v. Berry Plastics Corp.*, 803 F.3d at 514. "The burden then shifts to the employer to articulate a legitimate non-retaliatory reason for taking the adverse employment

6

action before ultimately shifting back to the plaintiff to establish that the employer's explanation is pretextual—i.e., unworthy of belief." *Id.*

Defendant focuses on the third element of Plaintiff's *prima facie* case and argues that there was no evidence of "but-for" causal connection between Plaintiff's role in the investigation of Mr. Erickson's conduct and Defendant's decision to terminate Plaintiff. ECF No. 42, 12–13.

However, this case is replete with genuine issues of material fact. Defendant claims that during Plaintiff's interview concerning Mr. Erickson's investigation, Plaintiff's statements were "based entirely" on what two other of Defendant's employees had told Plaintiff about Mr. Erickson's behavior. *Id.* at ¶ 20.

Indeed, concerning the specific event that initiated the investigation, Plaintiff relayed accounts of the evening he received from others, but did not personally view the objectionable conduct. *Id.*; ECF No. 63, ¶ 20. However, Plaintiff discussed firsthand accounts of Mr. Erickson's interactions with certain employees in other situations. ECF No. 63, ¶ 20; ECF No. 63-4 (under seal).

Defendant states that Mr. Erickson, Mr. Hobbs, and Mr. Taylor "were not provided any information as to the substance of the statements by any specific employee interviewed as part of the investigation . . . ." ECF No. 42, ¶ 23. Mr. Hobbs and Mr. Taylor were not given detailed information regarding the investigation, including specific people interviewed or notes from the interviews, but were aware of the general allegations. *Id.*

7

Mr. Erickson recognized that his investigation pertained to his alleged actions at the after-hours event and that Plaintiff was present at the event. ECF No. 63, ¶ 23 (citing ECF No. 63-3, 157:1–6). Mr. Erickson claimed he was not aware of who was interviewed in his investigation. ECF No. 42-5, 154:4–7. However, Ms. Harren noted to an employee that Mr. Erickson knew that the employee was interviewed and that "most of the [second] floor [had] been interviewed." ECF No. 63-16. Defendant argues that this meant that Ms. Harren was telling the employee that most of the second floor had been interviewed, not that Ms. Harren was telling the employee that Mr. Erickson knew that fact. ECF No. 55, ¶ 24, n.4.

Plaintiff notes that Mr. Erickson said Plaintiff's name multiple times during his interviews. ECF No. 63, 28. Additionally, Plaintiff alleges that after the investigation, Mr. Erickson excluded Plaintiff from a networking event in a manner about which another employee voiced concern. *Id.* at 28–29.

Concerning Plaintiff's corrective action notice, Plaintiff does not dispute the issuance nor the content of the corrective action notice, but claims that it was issued by Mr. Hobbs in retaliation for Plaintiff's participation in the investigation into Mr. Erickson's conduct. ECF No. 63, ¶ 12. Plaintiff agrees that Mr. Erickson neither wrote nor delivered the corrective action notice, but disputes that Mr. Erickson was uninvolved in its issuance. *Id.* at ¶ 13.

Regarding the justification for the corrective action notice, Defendant states that by waiving the letter of credit fee, Defendant would not generate an origination fee on the loan and that, like all relationship managers, Plaintiff was required to

obtain approval from Mr. Hobbs before agreeing to waive the letter of credit fee. ECF No. 42, ¶ 14. Plaintiff disputes both aspects of this assertion. Defendant could indeed not generate an origination fee on a loan where the fee is waived on the letter of credit, but it can still generate income from such a loan. *Id.*; ECF No. 63, ¶ 14.

Concerning approval and waiver of the fee, Plaintiff argues that he did not, as Defendant states, unilaterally waive the letter of credit fee because Executive Vice President and Chief Credit Officer Cathy Goss and Mr. Erickson approved the fee waiver. ECF No. 63, ¶ 12. He points to deposition testimony from Mr. Taylor noting that Ms. Goss has authority to approve letters of credit without a fee. *Id.* (citing ECF No. 63-8, 39:16–21).

In its Reply, Defendant points to an email where Ms. Goss tells Plaintiff that she forwarded Plaintiff's request to have a letter of credit with no fees to Mr. Hobbs "as he wants to approve all pricing exceptions." ECF No. 55, ¶ 12 (citing ECF No. 63-9, p. 3 (under seal)). Plaintiff argues that he was in a meeting with Mr. Hobbs and Mr. Taylor where fee waivers were discussed, citing as evidence his own words in the same email chain. ECF No. 63, ¶ 12 (citing ECF No. 63-9, p. 3 (under seal)). Additionally, Executive Vice President Anthony Pizzichini has waived a loan fee and Mr. Taylor stated Mr. Pizzichini would have more "flexibility," but not the "written authority" to do so on his own. *Id.* at ¶ 14 (citing ECF No. 63-8, 43:6–16; ECF No. 63-10, 21:24–22:5).

9

Concerning the justification of Plaintiff's dismissal, Defendant posits that a reduction in force ("RIF") was initiated to "reduce the size of its work force in order to align staffing with [Defendant's] financial goals for 2016." ECF No. 42, ¶ 26. Citing to the timeline of events and his own testimony, Plaintiff maintains that Defendant's decision to eliminate his position was "directly related" to his participation in the investigation against Mr. Erickson. ECF No. 63, ¶ 26 (citing ECF No. 63-2). Defendant explains that it initiated an RIF to more closely align itself with federal guidelines concerning the amount of commercial real estate loans a financial institution has compared to its capital. ECF No. 42, ¶¶ 27–31. Plaintiff counters that these ratios continued to grow after his termination. ECF No. 63, ¶ 31.

Defendant argues that Mr. Erickson had no role in the decision to eliminate a relationship manager position. ECF No. 42, ¶ 32. Mr. Erickson stated that the ultimate decision to eliminate a position was "collective," and acknowledged that he was part of the group tasked with deciding whose position would be eliminated. ECF No. 42-5, 43:9–45:1. Ms. Harren explained that Mr. Erickson was tasked by herself and Mr. Hobbs to complete a peer group analysis, which rated the relationship mangers under him. ECF No. 42-1, 64:11–16. She stated that Mr. Erickson was not the decisionmaker with respect to terminating Plaintiff's employment. *Id.* at 25:1–5.

Plaintiff claims that Mr. Erickson was intricately involved in the process to eliminate Plaintiff's position. ECF No. 63, ¶ 32. Focusing on deposition testimony

10

from Mr. Taylor, Mr. Hobbs, Ms. Harren, and Mr. Erickson, Plaintiff posits that: Mr. Taylor had no input in the decision, besides that he approved the RIF to eliminate a position from Mr. Erickson's group, ECF No. 63-8, 21:6–12; Mr. Hobbs approved and made the final decision on whom to terminate, ECF No. 63-6, 33:10–19; Mr. Hobbs's approval was not required, other than "concurrent approval," *id.*; Ms. Harren's approval was not required, *id.* at 34:2–7; Mr. Erickson was a substantial decisionmaker with respect to which person's employment to terminate ECF No. 63-3, 122:25–123:16; and Mr. Erickson was aware that the scores he gave in the peer group analysis would be used to decide whose job would be eliminated, *id.* at 66:22–25. ECF No. 63, ¶ 32.

Mr. Erickson alone performed the peer group analysis. *Id.* The peer group analysis form had been used numerous times by Defendant in the past, but not in the commercial real estate group since 2010. ECF No. 63-1, 38:11–15, 64:20–65:11.

Defendant argues the RIF process was neutral and applied uniformly to the three commercial real estate relationship managers. ECF No. 42, ¶¶ 33, 34. Plaintiff provides evidence that the RIF process through the peer group analysis was not neutral. ECF No. 63, ¶ 34. Ms. Harren explained that some of the categories considered in the peer group analysis were subjective. ECF No. 63-1, 41:19–42:12. Mr. Erickson disagreed that his rankings were based on his subjective views, but did recognize that his rankings were the basis of Plaintiff's performance review. ECF No. 63-3, 85:25–86:24. Plaintiff points to alleged inconsistencies

11

between the scores Mr. Erickson gave to the relationship managers and categories the scores represented. ECF No. 63, ¶ 34.

Defendants reply that Plaintiff recognizes that it was Mr. Erickson's task to score each relationship manager in the peer group analysis. ECF No. 55, ¶ 34. Defendants add that Plaintiff's speculation about how Mr. Erickson should have scored the reports would still have led Plaintiff to be the lowest performing of the relationship managers. *Id.*

To evaluate the relationship managers' portfolio growth and loan originations, Mr. Erickson considered monthly banker performance reports and closed loan reports. ECF No. 42, ¶ 38. Plaintiff's amount of funded loans—representing the money collected at closing—was below that of his peers. *Id.* at ¶ 39. Amounts funded and total percent funded are competency factors for relationship managers. *Id.* at ¶ 40. Plaintiff argues that his portfolio was construed in such a way that made his numbers seem artificially low. ECF No. 63, ¶ 39.

Finally, Defendant states that it has not hired a relationship manager in the real estate department since Plaintiff's termination. ECF No. 55, ¶ 48. In his deposition, Mr. Hobbs stated that there had been "no incremental additional relationship managers" to the real estate group, which is managed by Mr. Erickson. ECF No. 42-7, 20:3–12. However, Mr. Erickson testified that he had four relationship managers under him. ECF No. 63-3, 25:9–14. At the time of Plaintiff's termination, Mr. Erickson oversaw three relationship managers, including Plaintiff. ECF No. 42, ¶¶ 11, 43.

These genuine disputes of material facts provide a litany of inferences a jury may make regarding the *prima facie* case at hand. In a retaliation case, satisfying the third element necessitating causal connection requires evidence that "the motive for the adverse action was [the plaintiff's] opposition to unlawful discrimination." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1234 (10th Cir. 2015) (quoting *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1189 (10th Cir. 2002)); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . [which] requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

"For purposes of establishing a prima facie case of retaliation, a plaintiff can establish a causal connection by temporal proximity between the protected activity and adverse action." *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008). If temporal proximity is not found, the plaintiff must offer additional evidence to establish causation. *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citing *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997)).

There is no need at this juncture to delve into whether there was sufficient temporal proximity because there are sufficient disputes of material facts, noted *supra*, that would allow a reasonable jury to potentially conclude that the requisite causation existed. *Id.* (the court did not address the temporal argument because the

13

plaintiff "presented additional evidence from which a reasonable jury could find causation.").

Additionally, I do not consider the pretext argument because the fact disputes—including the reasons proffered by Defendant as explanations for why Plaintiff was terminated, the subsequent evaluation process, and Mr. Erickson's role in the process—are related to Defendant's alleged nondiscriminatory justifications for termination. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005) ("[O]nce a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment.") (citing cases).

Viewing evidence and inferences in the light most favorable to Plaintiff, there are genuine issues of material fact in this case. As such, summary judgment is inappropriate as to the retaliation claim.

### B. Promissory estoppel claim

Defendant argues that the claims made in its employee handbook are not sufficiently specific enough to create an enforceable promise to Plaintiff. ECF No. 42, 18–19. Defendant contends that Plaintiff's promissory estoppel claim is based on Defendant, through its handbook, promising to treat Plaintiff "in good faith and fairly, and that he would be free from retaliation." *Id.* at 20. Defendant continues that these assertions are too vague for this Court to understand its nature or to create a binding contract. *Id.*

14

Defendant adds that the disclaimer in its handbook precludes Plaintiff's claim of promissory estoppel. *Id.* at 21. Defendant argues it sufficiently included a message on the first page of its handbook which disclaimed that the handbook would not alter an employee's status as an at-will employee. *Id.* at 22.

Plaintiff argues that the handbook contained specific, binding language regarding Defendant's policy on retaliation and that it did not use discretionary language when describing employees' duties. ECF No. 63, 49–50. Plaintiff adds that Defendant's disclaimers were not clear and conspicuous. *Id.* at 51. Namely, it argues that the initial disclaimer is on "the page behind the cover of the [handbook] before the table of contents and is creatively named 'Important Information about This Handbook.'" *Id.* at 51. Plaintiff continues that, while the disclaimer is in bold, it is not capitalized, nor in its own section. *Id.* at 52. Additionally, Plaintiff notes that the Plaintiff did not sign the "Receipt of Handbook Acknowledgment." *Id.*

Plaintiff clarifies that he does not claim his employment was not at-will or that the handbook was a contract. *Id.* Plaintiff merely focuses on the promissory aspect of the handbook. *Id.*

Initially, I ponder the utility of bringing a Title VII claim and then alongside it, solely claiming promissory estoppel where the promise is, in relevant form, that Defendant would not violate Title VII. It seems duplicative because ultimate success of the promissory estoppel claim would necessarily mean that Plaintiff prevailed in the retaliation claim. However, if that were the case, Plaintiff would not be able to recover for both claims. *Mason v. Oklahoma Tpk. Auth.,* 115 F.3d

15

1442, 1459 (10th Cir. 1997), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011) ("It is well established that 'double recovery is precluded when alternative theories seeking the same relief are pled and tried together.'" (quoting *Clappier v. Flynn*, 605 F.2d 519, 530 (10th Cir. 1979)).

Such a concern has been voiced in this District before. *Peru v. T-Mobile USA, Inc.*, 897 F. Supp. 2d 1078, 1086 (D. Colo. 2012) (voicing concern regarding promissory estoppel claim when "the only promise allegedly breached is a promise to comply with federal antidiscrimination law" because it "necessarily require[d] proof of the substantive violation of the anti-discrimination law in order to demonstrate the breach of the promise, making [it] redundant of the statutory claim."). As explained *infra*, the existence of a sufficient disclaimer wins the day.

"Under Colorado law, an employee may seek to enforce his employer's personnel policies or procedures under a theory of breach of contract or promissory estoppel." *Geras v. Int'l Bus. Machines Corp.*, 638 F.3d 1311, 1315 (10th Cir. 2011) (citing cases). To state a claim for promissory estoppel, an employee must demonstrate that: (1) the employer should reasonably have expected the employee to consider its offer to the employee to be a commitment to follow procedures in an employment manual; (2) the employee reasonably relied on the procedures to his detriment; and (3) injustice can be avoided only by enforcement of the procedures. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo. 1987) (concerning termination procedures in an employment handbook).

However, a disclaimer that is clear and conspicuous evidences an employer's intent to not be bound by an employment handbook. *Ferrera v. Nielsen*, 799 P.2d 458, 461 (Colo. App. 1990). The purpose of the "clear and conspicuous" requirement is to ensure that the employee reads the provision and has notice that the company does not intend to form an employment contract. *Silchia v. MCI Telecommunications Corp.*, 942 F. Supp. 1369, 1374 (D. Colo. 1996) (citing *Ferrera*, 799 P.2d at 461).

As such, summary judgment denying promissory estoppel is appropriate if the employer has clearly and conspicuously disclaimed intent to enter into a contract. *Id.* (concerning limiting the right to discharge employees); *cf. Ramirez v. The GEO Grp., Inc.*, 655 F. Supp. 2d 1170, 1186 (D. Colo. 2009) ("[I]f the handbook expressly disclaims any intent to form a contractual relationship, an implied contract or estoppel claim fails as a matter of law."). Whether a disclaimer is clear and conspicuous is a question of law. *Id.* (citing *Durtsche v. American Colloid Co.*, 958 F.2d 1007, 1010 (10th Cir. 1992)).

Here, the disclaimer located in the front of the handbook was sufficiently clear and conspicuous. The disclaimer was in all capitals, on its own page, and titled "Important Information about This Handbook." ECF No. 42-2, p. 2. Additionally, while Plaintiff did not sign an acknowledgment waiver, as stated *supra*, he recognized that his email basically acknowledged that he had reviewed the handbook. ECF No. 42-2; ECF No. 42-4, 30:2–16.

This aligns with the types of disclaimers found to be acceptable in other cases. *See e.g.*, *Ramirez*, 655 F. Supp. 2d at 1186–88 (disclaimer was titled "FOREWORD" and signed receipt for employee handbook); *Silchia*, 942 F. Supp. at 1375 (disclaimer was contained in the "Notifications" section, set off in its own paragraph with the subject of the paragraph "Employment at Will" highlighted in bold and printed in large letters); *Healion v. Great–West Life Assur. Co.*, 830 F.Supp. 1372, 1375 (D. Colo. 1993) (disclaimer was on last page of preface of handbook in section entitled "About Your Handbook" coupled with signed acknowledgment); *Murray v. Cars Collision Ctr. of Colorado, LLC*, No. 1:04-cv-01456-EWN-CBS, 2006 WL 456266, at *14 (D. Colo. Feb. 23, 2006) (disclaimer was clearly worded, although it was not set forth in bold print or capital letters, because the disclaimer was located in a paragraph that was separate and indented and was the first paragraph on the second page) (unpublished); *Ferrera*, 799 P.2d at 461 (disclaimer was on first page of handbook labeled "IMPORTANT" coupled with signed acknowledgment).

Since the disclaimer was clear and conspicuous, Plaintiff's claim for promissory estoppel must fail as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's Motion for Summary Judgment is DENIED in respect to Plaintiff's Title VII retaliation claim and GRANTED in respect to Plaintiff's promissory estoppel claim.

Dated: December 14, 2018 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock

LEWIS T. BABCOCK, JUDGE